UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

COMFORT INNOVATIONS, LLC,

    Plaintiff/Appellant/Cross-Appellee,

v.

THOMAS MICHAEL HAARLANDER,

    Defendant/Appellee/Cross-Appellant.

Case No. 3:21-cv-00516

Judge Richardson

On appeal from the United States
Bankruptcy Court for the
Middle District of Tennessee,
Case No. 19-04033
Adversary Proc. 19-90178

## <u>MEMORANDUM OPINION AND ORDER</u>

The instant matter, as it arises in the captioned district court case, is an appeal and a corresponding cross-appeal from a judgment in a bankruptcy adversary proceeding. Specifically, these cross-appeals are from the Bankruptcy Court's "Order Granting Defendant-Appellee's Motion for Summary Judgment and Denying the Plaintiff-Appellant's Motion for Summary Judgment and Dismissing Adversary Proceeding" (Doc. No. 7 at 164-65, "Final Order of Bankruptcy Court"),[1] entered by the Bankruptcy Court on June 4, 2021.

Comfort Innovations, LLC ("Comfort Innovations") is the Plaintiff/Appellant/Cross-Appellee herein (*i.e.*, with respect to the instant appeal and the underlying adversary proceeding to which it relates), and Thomas Haarlander ("Debtor"), is the debtor in the underlying bankruptcy case and the Defendant/Appellee/Cross-Appellant herein. Comfort Innovations appeals the Final

---

[1] Citations herein are to the docket in the instant captioned district court case. This is true even where the document cited was originally filed in some other court (*i.e.*, the Bankruptcy Court or the Circuit Court for Davidson County, Tennessee); the citation herein is to where that document can be found on the instant docket after having been designated as part of the record for the instant appeal.

    When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

Order's grant of summary judgment to Debtor on Comfort Innovations's claim in this adversary proceeding, and Debtor cross-appeals, in effect on a conditional basis, the Bankruptcy Court's "Order Denying Defendant's Motion for Summary Judgment on the Limited Issue of Validity of Service" (Doc. No. 8 at 108-109).

For the reasons set forth below, the Court rejects the appeal, dismisses the cross-appeal as moot, and affirms the judgment of the Bankruptcy Court (*i.e.*, the Final Order of the Bankruptcy Court).

PROCEDURAL BACKGROUND

The Court accepts Comfort Innovation's below-referenced (commendably concise) summary of various procedural events, which, in the Court's view, is adequately supported by the items of record cited by Comfort Innovations:

On or about October 12, 2018, Comfort Innovations filed its Verified Complaint against the Debtor, Thomas Haarlander and Archiplex, LLC in the State Court and asserted causes of action for (1) breach of contract; (2) fraudulent misrepresentation; (3) fraud; (4) declaratory judgment – intellectual property; (5) declaratory judgment – bassinet mold; and (6) injunctive relief. Comfort Innovations's Verified Complaint was personally used upon the Debtor on October 25, 2018.

On January 11, 2019, a default was entered against the Debtor, Michael Haarlander and Archiplex, LLC leaving the determination of damages. On January 28, 2019, Michael Haarlander and Archiplex, LLC filed notice of filing bankruptcy proceedings and Comfort Innovations proceeded only against Thomas Haarlander. On February 6, 2019, the State Court conducted a hearing as to the Debtor only and, on February 22, 2019, the State Court entered the Order Granting Judgment in Favor of Plaintiff (the "State Court Judgment").

On July 24, 2019, Mr. Haarlander filed for relief under the Chapter 7 of the United States Bankruptcy Code in the Middle District of Tennessee.

On September 19, 2019, Comfort Innovations initiated an adversary proceeding by filing its Complaint for the Determination of Dischargeability of Debt seeking a judicial determination that its claim based upon the awards granted in the State Court Judgment were nondischargeable in accordance with 11 U.S.C.

§523 (a) (4) and (6) based upon the preclusive effect of the doctrines collateral estoppel and res judicata.

After seeking leave, Comfort Innovations filed its Amended Complaint on June 30, 2020, wherein it sought additional relief asserting its claim was further non-dischargeable under 11 U.S.C. §523 (a) (2).[2]

On August 21, 2020, the Debtor filed his Answer to the Amended Complaint.

On December 29, 2020, the Debtor filed his Motion for Summary Judgment arguing that the doctrines of res judicata and collateral estoppel were not satisfied in the present action and that the adversary should be dismissed. Adv. Docket Entry No. 64 – 66.

On February 5, 2021, Comfort Innovations filed its Motion for Summary Judgment arguing that all requirements for collateral estoppel and res judicata were satisfied and the preclusive effect of each requires that Comfort Innovations claim was nondischargeable under 11 U.S.C. §523 (a) (2), (4) and (6).

Both parties responded to the respective motions filed by the other on March 1, 2021. . . .

On April 16, 2021, the parties argued their respective motions for summary judgment and on May 26, 2021, the Bankruptcy Court made an oral ruling granting the Debtor's Motion for Summary Judgment with respect to non-dischargeability in accordance with 11 U.S.C. §523 (a) (2) (4) and (6) and Denying Comfort Innovations'[s] Motion for Summary Judgment with respect to 11 U.S.C. §523 (a) (2).

On June 16, 2021, Comfort Innovations timely filed its Notice of Appeal. Adv. Docket Entry No. 91.

---

[2] Debtor provides the following description of additional events, which appears accurate to the Court, that are relevant to Debtor's cross-appeal but not Comfort Innovations's appeal:

Following service of the Amended Complaint, the Debtor filed a Motion for Summary Judgment on the Limited Issue of Validity of Service of Process and supporting memorandum on July 1, 2020, arguing that Comfort Innovations did not lawfully serve the Debtor with the State Court Complaint in accordance with the requisite procedural rules, thereby rendering the State Court Order void ab initio for lack of personal jurisdiction. The Bankruptcy Court denied such motion by the Debtor and entered its *Order Denying Defendant's Motion for Summary Judgment on the Limited Issue of Validity of Service of Process* . . . , finding the Rooker-Feldman doctrine prevented its review of the State Court Order.

(Doc. No. 18 at 13) (citations omitted).

On June 29, 2021, the Debtor filed his Statement of Election to Proceed in District Court.

(Doc. No. 12 at 11-13) (citations omitted) (footnote added).[3]

On May 26, 201, the Bankruptcy Court made oral findings of fact and conclusions of law on Comfort Innovations's motion for summary judgment. In pertinent part, the Bankruptcy Judge stated:

> The state court considered the allegations of fraud and intentional misrepresentation in the plaintiff's verified complaint and determined after a hearing for damages at which evidence and testimony was produced that punitive damages against the defendant were appropriate. However, just because the state court order refers to fraud and intentional misrepresentation does not mean that the judgment estops or precludes the defendant from challenging the nondischargeability asserted by the plaintiff.

(Doc. No. 7 at 169-70).

Then, after reciting the below-discussed five elements of collateral estoppel under Tennessee law, as well as the elements of res judicata (which, as discussed below, actually would be of no help to Comfort Innovations here even if its elements could be established), the Bankruptcy Judge stated:

> For these preclusive doctrines to hold true, preventing a dischargeability action to proceed, the state court judgment must include a determination of elements such that the question of dischargeability before the bankruptcy court is answered. Citing Grogan v. Gardner (sic).
>
> Here, the state court complaint and the default judgment do not meet the required standards. First, no specific allegations or findings were made against the defendant debtor. Second, the evidence provided at the damages hearing illustrates the losses suffered by plaintiff but does not contain support for findings under the strict standard required by 523(a)(2), (4) or (6). Moreover, the state court order is insufficient to establish any of the elements of any of the asserted counts against the debtor.

---

[3] The "State Court" referred to by Comfort Innovations is the Circuit Court for Davidson County, Tennessee. It will generally be referred to herein as the "state court."

Plaintiff's amended complaint relies solely on the preclusive effect of the state court order and does not contain independent allegations or allege conduct of the defendant.[4]

Since there are no genuine issues of material fact, because the entire record from the state court case and the related bankruptcy proceeding are before this Court, the Court finds that the defendant is entitled to summary judgment as a matter of law on the issues of res judicata and collateral estoppel with a specific finding that these doctrines are not satisfied in the present case. Therefore, the plaintiff's motion is denied, and the defendant's request for summary judgment on all counts is granted, and the adversary proceeding is dismissed with prejudice. The defendant is to submit the order granting its motion, and the Court will enter the order denying the plaintiff's motion. And that is the Court's ruling.

(*Id.* at 171-72) (footnote added). In a subsequent order, which incorporated by reference

its prior oral findings of fact and conclusions of law, the Bankruptcy Court issued an order

memorializing the grant of summary judgment to Debtor and the corresponding denial of

summary judgment to Comfort Innovations, and declaring discharged Comfort

---

[4] The Bankruptcy Judge's comments were apt in this regard, inasmuch as the Amended Complaint contained, in terms of factual allegations, only the following:

(i) On July 24, 2019, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code in the Middle District of Tennessee (the "Petition Date").

(ii) The Plaintiff is a creditor of the Debtor by virtue of an Order Granting Judgment in Favor of Plaintiff entered by the Fifth Circuit Court for Davidson County, Tennessee at Nashville ("State Court") dated February 22, 2019 (the "Judgment"). The Judgment is attached [to the Amended Complaint] as Exhibit A.

(iii) On February 6, 2019, the State Court conducted a hearing on the merits for damages and conclusively determined that based on the fraud and intentional misrepresentations of the Defendant, the Plaintiff was entitled to punitive damages against the Defendant in the amount of Two-Hundred Twenty Thousand Thirty-One Dollars and No Cents ($220,031.00).

(iv) The State Court further awarded the Plaintiff compensatory damages in the amount of Two-Hundred Twenty Thousand Thirty-One Dollars and No Cents ($220,031.00) for a total judgment of $440,062.00.

(Doc. No. 7 at 6-7).

Innovations's claims against Debtor described in the Amended Complaint. (Doc. No. 7 at 164-65).

ANALYSIS

In the Amended Complaint, Comfort Innovations claims that the debt owed to it by the Debtor under the State Court Judgment is non-dischargeable under 11 U.S.C. §523 (a)(2)(A), (4) and (6). (Doc. No. 7 at 7). Under 11 U.S.C. § 523(a)(2)(A), a discharge under 11 U.S.C. § 727 does not discharge a debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…." Under 11 U.S.C. § 523(a)(4), such discharge does not discharge a debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." And under 11 U.S.C. § 523(a)(6), such discharge does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

As indicated above, neither in the Amended Complaint nor at the summary judgment stage did Comfort Innovations endeavor to establish non-dischargeability under any of these three exceptions to dischargeability, other than by asserting the applicability of res judicata and collateral estoppel. Rather, as Comfort Innovations puts it, it sought in its Complaint (and in its Amended Complaint, which merely asserted an additional ground for non-dischargeability, namely 11 U.S.C. §523 (a) (2)) "a judicial determination that its claim based upon the awards granted in the State Court Judgment were nondischargeable in accordance with 11 U.S.C. §523 (a) (4) and (6) *based upon the preclusive effect of the doctrines [of] collateral estoppel and res judicata*." (Doc. No. 12 at 12). The Court will address in turn whether Comfort Innovations's claim of non-dischargeability succeeds based on (a) res judicata or (b) collateral estoppel. The Court

finds (as the parties seem to agree) both that there are no genuine issues of material fact that bear on this question, which is a question of law,[5] and that the Court can decide this issue as a matter of law. In making its decision on this question of law, the Court is cognizant that it reviews the Bankruptcy Court's determination de novo, meaning that the Court is required "'to review questions of law independent of the bankruptcy court's determination.'" *Bailey v. Bailey*, 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (quoting *First Union Mortgage Corp. v. Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted)).

I.  <u>Even if the elements of res judicata (claim preclusion) could be satisfied in the present case, Comfort Innovations did not actually asserts res judicata (claim preclusion) in this case, and any such assertion would have been to no avail anyway because the particular preclusive effect of res judicata would serve to assist Comfort Innovations neither in obtaining summary judgment itself nor in preventing Debtor from obtaining summary judgment.</u>

Comfort Innovations refers to res judicata (as opposed to collateral estoppel) as a basis for prevailing on its claim of non-dischargeability, and Debtor felt compelled to debunk res judicata as such a basis. But review of Comfort Innovations's briefing suggests that Comfort Innovations did not actually assert res judicata as a basis for supporting its claim separate from the basis of collateral estoppel. Nowhere does Comfort Innovations describe the elements of collateral estoppel, let alone explain how those elements are satisfied in the present case.

It appears to the undersigned that in its actual argument portions of its briefing, Comfort Innovations referred to res judicata only in passing, merely to assert that collateral estoppel (on which Comfort Innovations *does* rely) is considered "an 'extension' of the doctrine of res judicata." (Doc. No. 12 at 21 (citing *Allen v. McCurry*, 449 U.S. 90 (1980)). But *Allen* simply does not support that notion; the Court does not know why Comfort Innovations claims that it does, and

---

[5] As Comfort Innovations explains, with citation to appropriate case law, "'Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo." (Doc. No. 12 at 10).

more specifically does not know why Comfort Innovations unmistakably represented to this Court that *Allen* used the term "extension" in this context, when in fact neither the majority nor the dissent in *Allen* used the word "extension" at all, or used any variant of the word in this context.

On the other hand, the Court is aware that Tennessee courts have gone even further than *Allen* supposedly went in describing the connection between res judicata and collateral estoppel. Tennessee courts have used the term *res judicata* to encompass both "claim preclusion" and "issue preclusion" (also known as "collateral estoppel"). *See Sears v. Sears*, No. 3:19-cv-00807, 2020 WL 606596, at *6 (M.D. Tenn. Feb. 7, 2020) (citing *West v. Parker*, 783 F. App'x 506, 512 n.2 (6th Cir. 2019)). But traditionally, and certainly in its narrowest sense, *res judicata* refers only to claim preclusion, and thus the Court herein uses the two terms interchangeably (except to the extent that the immediately preceding sentence made a distinction between the two terms).[6] It appears that in this adversary proceeding Comfort Innovations has referred to *res judicata* only because the doctrine on which it *was* relying—collateral estoppel—is sometimes spoken of as if it is a *kind* (version) of *res judicata*. The undersigned personally has doubts as the utility of describing collateral estoppel in this way, especially considering the kind of confusion it can foster (a confusion readily apparent in the instant case) as to whether a party referring to *res judicata* is invoking claim preclusion, issue preclusion, or both. But collateral estoppel has been described this way at times by Tennessee courts (and, for that matter, federal courts),[7] and this appears to be why Comfort Innovations referred to it despite not making any argument based on *res judicata* as a doctrine separate from collateral estoppel.

---

[6] The Court likewise herein will use the terms "collateral estoppel" and "issue preclusion" interchangeably.

[7] "There are two types of res judicata: issue preclusion and claim preclusion." *Tubbs v. Long*, No. 22-5127, 2022 WL 13983800, at *5 (6th Cir. Oct. 24, 2022) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

As a separate doctrine, *res judicata* is "'the preclusion of claims that have once been litigated or could have been litigated' in a previous lawsuit." *Sutton v. Parker*, No. 3:19-cv-00005, 2019 WL 4220896, at *6 (M.D. Tenn. Sept. 5, 2019) (quoting *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003)). It "rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Id.* (quoting *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996)). "Federal courts are required to apply *res judicata* in a manner to give the same effect to the Tennessee state court judgment as would another Tennessee state court."[8] *Id.* Under Tennessee law, *res judicata* bars "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Id.* at *7 (quoting *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979)).

Even if Comfort Innovations has actually asserted the doctrine of res judicata as it is recognized under Tennessee law, and even if it had established that the elements were met here, it would have done Comfort Innovations no good. This is readily apparent when one considers what *res judicata* actually *can and cannot do* when its elements are satisfied. If Comfort Innovations had invoked res judicata, it is clear the purpose for which it would have invoked res judicata: to enable Comfort Innovations to prevail automatically as a matter of law, or to look at it from the other direction, to preclude Debtor as a matter of law from defeating Comfort Innovations's claim.

---

[8] Tennessee courts have a "long-standing tradition in upholding judgments" pursuant to *res judicata*. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 400 (Tenn. Ct. App. 2009), *cited in Sutton*, 2019 WL 4220896, at *6. The policy rationale in support of *res judicata* "is justifiable on the broad grounds of public policy which requires an eventual end to litigation." *Id.* (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)). It is intended "to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter." *Id.* (quoting *Moulton*, 533 S.W.2d at 296).

But claim preclusion cannot serve to do either, considering the limited preclusive consequences claim preclusion is able to impart when its elements are satisfied.

As is common across various American jurisdictions, "*[r]es judicata* bars a second suit between parties or their privies on the same claim." *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 766 (Tenn. Ct. App. 2001). To reiterate, when res judicata is applicable, it "precludes a second suit with respect to all issues which were or could have been litigated in the first action." *Id.*; *accord, Gerber v. Holcomb*, 219 S.W.3d 914, 917 (Tenn. Ct. App. 2006).

In other words, it acts *defensively*, to preclude the so-called second (or "subsequent") claim. But the "second" claim here, of course, is Comfort Innovations's *own* claim of dischargeability at issue on this appeal; this current claim is the "second" claim for claim-preclusion purposes because it is a claim brought subsequent to the first suit (here, the state court action) that supposedly has a preclusive effect. And, to say the least, Comfort Innovations does not want to *preclude* this claim; rather, it wants to *prevail on* this claim. Unsurprisingly (since, as discussed, Comfort Innovations does not appear to actually rely on *res judicata* at all), Comfort Innovations cites no authority for the proposition that under Tennessee law claim preclusion can be used in this kind of "offensive" manner, and as noted above claim preclusion as described in Tennessee case law as a *defensive* tool, serving to defend against (and defeat entirely) an opposing party's claim.[9]

---

[9] On the other hand, under Tennessee law, under some circumstances issue preclusion *can* be invoked offensively. "There are two general categories of collateral estoppel—defensive and offensive. Defensive collateral estoppel refers to a defendant seeking to prevent a plaintiff from relitigating an issue that the plaintiff has previously litigated and lost. Offensive collateral estoppel refers to a plaintiff attempting to prevent a defendant from relitigating an issue that the defendant has previously litigated and lost." *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107-08 (Tenn. 2016). (citations omitted). Like other jurisdictions, Tennessee recognizes both defensive and offensive collateral estoppel. *Id.* at 114. Notably, federal law likewise allows offensive collateral estoppel. *See Shore v. Parklane Hosiery Co.*, 439 U.S. 322, 331 (1979) (deciding "not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied").

Both Bowen and *Parklane Hosiery* involved so-called non-mutual offensive collateral estoppel, but unsurprisingly, Tennessee also allows mutual offensive collateral estoppel, meaning "permitting the plaintiff to foreclose a defendant from relitigating an issue that the defendant had previously litigated

In short, Comfort Innovations appeared to claim error in the Bankruptcy Court's failure to "offer"—by which it surely means *apply*—"the preclusive effects of res judicata." (Doc. No. 12 at 9).  However, Comfort Innovations has not actually invoked res judicata separately from collateral estoppel. And the preclusive effects of res judicata—barring claims but not defenses—would do Comfort Innovations no good in any event.

Accordingly, the Court declines Plaintiff's invitation to apply res judicata (claim preclusion) as a basis for reversing the grant summary judgment to Debtor and the denial of summary judgment to Comfort Innovations.

II.  <u>As a matter of law, and based on facts not in genuine dispute, Comfort Innovations's claim of non-dischargeability fails because it relies exclusively on the purported ability of collateral estoppel to establish all elements of the claims collateral estoppel, and collateral estoppel fails to serve to establish at least one element of Comfort Innovations's claim.</u>

Unlike res judicata, collateral estoppel is actually asserted by Comfort Innovations as a means (to the exclusionary of any other means) for establishing the elements of its claim of non-dischargeability, As indicated in a footnote herein, collateral estoppel (unlike res judicata) can be used in this kind of offensive (as opposed to defensive) manner, to the extent that the elements of collateral estoppel are satisfied as to a particular issue as to which offensive preclusive effect is

---

unsuccessfully in another action against the same plaintiff." *Beaty v. McGraw*, 15 S.W.3d 819, 825 (Tenn. Ct. App. 1998), *abrogated on other grounds by Bowen*, 502 S.W.3d 102. As *Bowen* makes clear, both nonmutual and mutual offensive collateral estoppel are recognized under Tennessee law. 502 S.W.3d at 114-16, And as *Beaty* (which was abrogated by *Bowen* only as to *Beaty*'s refusal to recognize non-mutual offensive collateral estoppel, and not as to *Beaty's* views on mutual offensive collateral estoppel) makes clear, application of mutual offensive collateral estoppel is a matter committed to the discretion of the court. *Beaty*, 15 S.W.3d at 826. *Bowen* held likewise as to non-mutual collateral estoppel. *Id.* at 116 (noting the "considerable discretion [afforded] to courts determining whether nonmutual collateral estoppel should apply in a particular case.").

When it is applicable, offensive collateral estoppel obviously can assist a plaintiff (like Comfort Innovations here) by precluding a defendant (like Debtor here) from prevailing on key issues (like the existence or non-existence of the elements of the plaintiff's claim) that were resolved against the defendant in an earlier proceeding. Issue preclusion, and the policies underlying it, conceivably have been applicable here and assisted Plaintiff in establishing its claims. But as discussed below, it is clear, based on facts not in dispute, that as a matter of law collateral estoppel is inapplicable here.

sought. This because, under Tennessee law the (issue-specific)[10] preclusive effect of collateral estoppel—where it does apply, due to the satisfaction of *all* of its elements—is to bar re-litigation in a subsequent proceeding, by the same parties involved in an earlier proceeding, of one or more issues raised and determined in the earlier proceeding. *See Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009). "Thus, when an issue has been actually and necessarily determined in an earlier proceeding between the parties, that determination is conclusive against the parties in subsequent proceedings."[11] *Id.* at 535. "The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a)." *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995) (citing *Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991)).

    To prevail based solely on collateral estoppel, as Comfort Innovations must do,[12] Comfort Innovations must show (based on facts not in genuine dispute) that all elements of collateral estoppel are established as to all elements of its claim. If it cannot do so, it cannot obtain summary judgment. Conversely, if facts not in genuine dispute instead show affirmatively that at least one element of collateral estoppel *cannot* be satisfied as to at least one element of its claim, then Comfort Innovations must suffer summary judgment itself in response to debtor's cross-motion

---

[10] "Unlike claim preclusion, collateral estoppel applies only to *specific issues*." *McCarty v. Wood*, 249 So. 3d 425, 435 (Miss. Ct. App.) (decided under Mississippi law), *writ not considered*, 246 So. 3d 72 (Miss. 2018). The Court has little trouble concluding that the same is true under Tennessee law.

[11] This characterization of the preclusive effect of collateral estoppel is accurate, but the statement is inexact in that it suggests that collateral estoppel necessarily applies (so as to have this preclusive effect) whenever an issue has been actually and necessarily determined in an earlier proceeding between the parties. In reality, collateral estoppel does not apply to an issue unless *all* elements of collateral estoppel are met with respect to that issue—and as made clear herein, the elements require more than just that the issue have  has been actually and necessarily determined in an earlier proceeding between the parties.

[12] As the Bankruptcy Judge stated orally, "[Comfort Innovations's] amended complaint relies solely on the preclusive effect of the state court order and does not contain independent allegations or allege conduct of the defendant." (Doc. No. 7 at 171).  The same is true, unsurprisingly, of Comfort Innovations's argument on appeal; it relies solely on the alleged preclusive effect (based on collateral estoppel) of the state court order, and not on the independent establishment of facts that would render Debtor's debt to Comfort Innovations non-dischargeable.

for summary judgment. The Bankruptcy Court determined that this was indeed the case.[13] The undersigned agrees.

To prevail with a collateral estoppel claim, the party asserting it must demonstrate: (1) that the issue sought to be precluded is identical to an issue decided in an earlier proceeding; (2) that the issue sought to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier to contest the issue now sought to be precluded. *See Mullins*, 294 S.W.2d at 535. "The party seeking to rely on the doctrine of collateral estoppel has the burden of proof [to establish its applicability]" *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 147 S.W.3d 225, 232 (Tenn. Ct. App. 2003) (citing *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992)).[14]

---

[13] As noted above, the Bankruptcy Judge reasoned orally that the preclusive doctrine of collateral estoppel did not enable Comfort Innovations to avoid suffering summary judgment (let alone obtain summary judgment itself), because

> the state court complaint and the default judgment do not meet the required standards. First, no specific allegations or findings were made against the defendant debtor. Second, the evidence provided at the damages hearing illustrates the losses suffered by plaintiff but does not contain support for findings under the strict standard required by 523(a)(2), (4) or (6). Moreover, the state court order is insufficient to establish any of the elements of any of the asserted counts against the debtor.

(Doc. No. 7 at 171).

[14] Although applicable case law on point is scarce, it makes good sense to the undersigned that in federal cases in which state law supplies the substantive law regarding res judicata and collateral estoppel, federal law also dictates the extent to which the party invoking res judicata or collateral estoppel bears the burden of establishing the applicability of the doctrine(s) invoked. But to the extent that state law does not do so, and that something else (whether conceived as "federal common law" or well-established axioms of American jurisprudence) dictates the "burden" issue, it appears that the result would be consistent with Tennessee law. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) (stating without any

In the present case, there appears little or no doubt that the last three elements are satisfied. That leaves the first two elements, the first of which merely emphasizes that the issue referred to in the second element must be "identical" across the first and second proceeding. So the two elements may be combined and stated (as what the undersigned will call the "combined 1-2 element") primarily in terms of the *second* element: the issue sought to be precluded in the current (*i.e.*, second or subsequent) proceeding is identical to an issue that was actually raised, litigated, and decided on the merits in the earlier proceeding. Decades ago, the undersigned noted that in this specific context, courts use other terms as alternatives to "identical." Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 69 (1995) ("Invariably, collateral estoppel's first requirement is that the issue to be precluded bears a close relationship to an issue involved in a prior proceeding. Courts use various phrases to express the requisite relationship: the issues must be (take your pick) 'identical, 'the same,' 'precisely the same,' or 'in substance the same.' Put differently, collateral estoppel requires 'identity of issues.'" (footnotes omitted)). In this context, Tennessee courts use the word "identical" interchangeably with "same." *See, e.g., Mullins*, 294 S.W.2d at 536 (noting that "for the doctrine of collateral estoppel to apply, the issue or issues sought to be precluded in the later proceeding must be identical," then finding this requirement satisfied because the subsequent and earlier proceeding involved the "same issue").

The point is that in assessing the requirement that the issues in the two proceedings be "identical," the Court does not apply an especially specific or hyper-technical notion of "identical." As the undersigned has previously noted, there is a underlying concept—which he has called

---

citation to any authority that "[t]he burden is on the party asserting collateral estoppel to establish its predicates, and this of course includes presenting an adequate record for the purpose.").

"sameness"—that courts attempt to capture with whatever term(s) they use.[15] Richardson, *supra*, at 69. The concept of sameness can be illusory and subjective, and in some cases reasonable persons can disagree about whether two things (such as issues) are the same. *Id.* But the undersigned's job is to call sameness like he sees it, and pronounce whether Comfort Innovations has shown the "sameness" of issues required to satisfy the combined 1-2 element—or, conversely, whether as a matter of law he cannot show same sameness on the facts not here in genuine dispute. In so doing, he can and does focus exclusively on one necessary part of the combined 1-2 element, namely, the requirement that the issue (*i.e.*, the element of the claim of non-dischargeability) on which Comfort Innovations seeks preclusion have been *actually decided* by the state court (as opposed to merely raised and litigated by the parties). " *Am. Indus. Servs., Inc.*, 2006 WL 1082833, at *5 (Tenn. Ct. App. Apr. 25, 2006) ("When a party invokes the collateral estoppel doctrine, the court must first ascertain what issue or issues were actually decided in the first proceeding. For the purpose of this analysis, an 'issue' is any disputed point or question raised by the parties' pleadings concerning which the parties desire a decision. The court must then determine what issue or issues are involved in the second proceeding and must compare the issues in the two proceedings to determine whether they are identical.").

As noted above, Comfort Innovations has asserted three different statutory bases for non-dischargeability, which the Court will address one by one with respect to the sameness of issues.

## A. Section 523(a)(2)(A)

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3)

---

[15] Notably, Tennessee courts insist on sameness, as merely "similar[ity]" will not suffice. *See, e.g.*, *Am. Indus. Servs., Inc. v. Howard,* No. M2003-01656-COA-R3CV, 2006 WL 1082833, at *5 (Tenn. Ct. App. Apr. 25, 2006).

the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc.*, 141 F.3d 277, 280-81 (6th Cir. 1998) (footnote omitted). As noted above, Comfort Innovations must suffer summary judgment on this claim if there is one or more of these elements that as a matter of law *cannot* be satisfied via the application of collateral estoppel to the element. And there is indeed at least one.

The Court realizes that the Sixth Circuit has rejected the notion that "the elements necessary to prove fraud under Tennessee law differ from the elements necessary to prove fraud under 11 U.S.C. § 523(a)(2)." *Bursack*, 65 F.3d at 55. In other words, the two sets of elements are to be treated as substantively the same for collateral estoppel purposes, even if they differ somewhat in their precise verbal formulation. This means that the question of "sameness" here, unlike in some context, is easily resolved; there is sameness of issues between whether the elements of fraud under Tennessee law and the elements of a Section 523(a) claim.

So far so good for Comfort Innovations. But as *Bursack* itself indicates, this means that the Section 523(a)(2) claim is satisfied solely by operation of collateral estoppel *only if* it is true that "each of the elements necessary to prove fraud for the purpose of non-dischargeability under § 523(a)(2) [*i.e.,* each of the elements of fraud under Tennessee law] was pleaded, argued, and considered by the [factfinder] in the state court action." *Id.* In context, and considering Tennessee law of collateral estoppel, it is clear that *Bursack* meant that each of these elements needed also to have been *found*—and not merely "considered"—by the factfinder (the state court judge, rather than a jury, in the present case) in the prior state court action. In *Bursack*, it was clear that this had occurred; "each of the elements necessary to prove fraud for the purpose of nondischargeability under § 523(a)(2) was pleaded, argued, and considered by the jury in the state court action." *Id.* (internal quotation marks omitted).

The same kind of thing cannot be said in the present case. Given the extreme brevity of the state court's order, and the fact that the state court was not at all concerned with ticking of the elements of claim of nondischargeability, Comfort Innovations cannot show that the state court actually decided—*i.e.*, made factual determinations—regarding the existence of *all* of the elements of fraud under Tennessee law. Given Comfort Innovations's inability to establish this element (or, more precisely, sub-element of element two) of collateral estoppel, Comfort Innovations's has failed to establish the applicability of collateral estoppel.

To closely paraphrase Comfort Innovations's specification of those elements, they are as follows:

> (1) the defendant made an intentional misrepresentation with regard to a material fact;
>
> (2) the defendant had knowledge of the representation's falsity, *i.e.,* made the representation "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity;
>
> (3) the plaintiff reasonably relied on the misrepresentation and suffered damage;[16] and
>
> (4) the misrepresentation relates to an existing or past fact or, if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise.

(Doc. No. 12 at 29-30). Even assuming arguendo that the acts and mental state of any of Debtor's co-defendants in the state court case are attributable to defendant for purposes of these elements, the Court still cannot conclude on this record that the state court determined that *all four* of these elements existed. In particular, the Court cannot find that Comfort Innovations reasonably relied on one or more misrepresentations attributable to Debtor.

---

[16] Though framed as a single element, this element clearly has two components. For ease of discussion, the Court will refer to it as if it had only one component, namely reasonable reliance, and that Comfort Innovations never had to show "suffer[ing] damage" as part of this element. Even though the discussion will proceed as if the state court did not have to actually determine that Comfort Innovations "suffered damage," however, Comfort Innovations fails to satisfy this burden because it fails to show that the state court actually determined the existence of reasonable reliance by Comfort Innovations.

A review of the state court judgment shows that the state court, at best,[17] made only the following findings: (1) there were "breaches of contract and intentional misrepresentations by Defendants; (2) as a result of such acts, Comfort Innovations suffered extensive losses, including payments for materials never delivered, certain engineering costs, the cost of a bassinet mold, lost profits, and replacement costs for defective units; and (3) Comfort Innovations suffered compensatory damages in the amount of $220,031.00; there were "ongoing schemes and misrepresentations of the defendants."[18] (Doc. No. 7 at 15-16).

There is absolutely no mention of the notion of reliance on the part of Comfort Innovations, reasonable or otherwise. The only basis on which this Court nevertheless could find that the state court actually found the existence of the "reasonable reliance' element is to *assume* that the state court must have found such element—*i.e.*, to assume that because the state court found liable on the fraud claim, and because liability on the fraud claim requires satisfaction of the "reasonable reliance" element, the state court "must have" found the existence of the reasonable reliance element. Comfort Innovations clearly relies on this presumption; it argues that "the State Court, by concluding that a fraud and misrepresentation were committed, affirmative established" all elements of a fraud claim under Tennessee law, including reasonable reliance. (Doc. No. 12 at 32). But the Court refused to indulge in such an assumption, for multiple reasons.

To begin with, Comfort Innovations provides no authority for the proposition that this Court should assume that the state court acted correctly under applicable law. More specifically, Comfort Innovations fails to provide any authority for the proposition that this Court should

---

[17] As to some of these facts, the state court did not make any express finding, but merely described the existence of evidence tending to show such fact(s). Nevertheless, construing the record in Comfort Innovations's favor, the Court herein treats these facts as having been determined by the state court.

[18] The state court also found that "it is appropriate to assess punitive damages in an amount identical to the award of compensatory damages ($220,031.00)," but that is not a factual determination as such.

assume that just because a prior court announced liability on a claim, it actually determined that each specific element of the claim actually was met (as would be required for the announcement of liability to be correct). *Bursack* certainly does not support this proposition; there, the Sixth Circuit did not assume that the factfinder found the existence of all elements of fraud claim under Tennessee law merely because the factfinder pronounced liability on a fraud claim; instead, it relied on the fact that "*jury instructions*, together with the rest of the state court record in this case, clearly indicate that each of the elements necessary to prove fraud for the purpose of nondischargeability under § 523(a)(2) was pleaded, argued, and considered by the jury in the state court action." *Bursack*, 65 F.3d at 55 (emphasis added). The Court's reference here to jury instructions is telling; it suggests that the Court was willing to say that all elements had been found precisely because the jury instructions recited all elements of the claim and ensured that *all* elements were on the radar of the factfinder prior to a finding of liability for fraud. In the present case, there is no such indication in the record that the element of reasonable reliance was on the radar of the factfinder when considering liability on Comfort Innovations's fraud claim. And although the Court does not doubt that the learned state court judge had considerable familiarity with the elements of Fraud under Tennessee law, the Court does not believe it is safe to simply assume that he had the element of reasonable reliance in mind when finding liability on the part of Debtor.

The undersigned perceives real peril in making assumptions about what did and did not go on inside another jurist's head, as such is speculative. Relatedly, the Court must be cautious about assuming that "the state court 'must have concluded'" something in particular under the rationale that the assumption is necessary to make the state court order intelligible. *PaineWebber Inc. v. Farnham*, 870 F.2d 1286, 1291 (7th Cir. 1989)

Moreover, any such assumption seems to run counter to Tennessee law, which directs this Court both to look *at the record* to ascertain what was actually decided in a prior case and to understand the significance (to the collateral estoppel analysis) of extreme brevity in the analysis undertaken by the court in the prior case. In *Dickerson v. Godfrey*, 825 S.W.2d 692 (Tenn. 1992), the plaintiff sought worker's compensation benefits for the accidental death of the children's father during the installation of a sewer line. She sued Arthur Godfrey (the deceased's employer), as well as Rick Catinella, Steve Maynard and Walker Springs Square Partnership (the landowners who had contracted for the sewer-line work and who the plaintiff contended were liable to pay benefits as "principal contractors" under Tennessee's worker's compensation law). *Id.* at 693. The trial court granted summary judgment in favor of the three landowners on the basis that the result in the plaintiff's previous unsuccessful tort action against the landowners collaterally estopped her from relitigating the issue of the control exercised by the landowners over the work being done. *Id.* at 694. On appeal, the plaintiff asserted that collateral estoppel was inapplicable and that she was entitled to litigate the issue of the landowners' contractor status. *Id.* The Tennessee Supreme Court agreed and thus reversed the trial court, explaining:

> The party who asserts the doctrine of collateral estoppel in seeking to bar litigation of an issue has the burden of proving that the issue was, in fact, determined in a prior suit between the same parties and that the issue's determination was necessary to the judgment. In this case, the imprecise motion for summary judgment in the tort action and the summary order granting it do not suffice.

> *We have no way of knowing from the record in the tort action the particular issue or issues determined by the trial court to call for dismissal of the case.* Its ruling was the equivalent of a general verdict. In such a case, for us to use the trial court's action as a basis of estoppel, it would require us to conclude that the issue of control was the fundamental requisite to plaintiff's cause of action and that the dismissal necessarily resolved that issue against the plaintiff. *See, e.g., Cole v. Arnold,* 545 S.W.2d 95, 97 (Tenn.1977). Given the element of proximate cause and the defense of contributory negligence raised by the landowners, we cannot so conclude.

We acknowledge that the Court of Appeals opinion noted that Mr. Catinella "did not . . . purport to direct how the work should be done" and that Mr. Godfrey said "he was the boss and no one from Walker Springs told him how to do the work." Also, it referred to Godfrey as an independent contractor. However, it is far from clear that the question of the landowners' right to control was actually a litigated issue. In fact, given the Court of Appeal's statement that the plaintiff's theory was that the deceased was a business invitee, it is doubtful that the court viewed the case as one requiring it to approve or reject a trial court finding regarding the landowners' right to control.

We do not equate the statements of fact in the opinion with a specific holding on the issue in question, i.e., whether the landowners' lack of right to control the work being done precluded them from being considered principal contractors.

*Id.* at 695 (emphasis added). The instant case is different from *Dickerson* in a couple of ways, concededly. In *Dickerson*, there were multiple possible proper bases for the decision (in favor of the landowner defendants) reached in the prior case; by contrast, in the instant case, there is really only one *proper* basis for the state court's decision, *i.e.,* a determination that all elements of the fraud claim had been satisfied with respect to Debtor. But *Dickerson* nevertheless is instructive here. It teaches that when asked to apply collateral estoppel, a court should look *to the record to see*, rather than *speculate about*, what was actually decided. *Dickerson* also cautions against taking a factual statement in the prior court decision to reflect a holding on a different specific issue; thus, the Court here should be hesitant to take the state court's statement that there were misrepresentations to amount to a holding that the misrepresentations in question were adequate to support liability because they were reasonably relied upon by Comfort Innovations; the Court thus declines to treat the state court's statement that there were misrepresentations to effectively encompass a holding that the plaintiff *reasonably relied* on those misrepresentations.

The undersigned has searched for authority to support the proposition that this Court, confronted with a prior-case court order that is exceedingly brief and devoid of any real

discussion,[19] should presume that the issuing court actually found the existence of all elements of a claim based solely on the order's conclusory announcement of liability on a claim. On the other hand, authority does exist to support that notion that it is difficult to conclude what was actually decided by a prior court that issued a very cursory order. *See, e.g., PaineWebber*, 870 F.2d at 1290-92 (7th Cir. 1989) (reversing district judge's finding, for purposes of the law-of-the case doctrine, that a state court previously had decided a particular issue, because "[t]he vagueness of the state court order, when coupled with the attention given to peripheral issues, renders the . . . order defective for the purposes of establishing the law of the case.").[20]

The Court does not mean to criticize the prior court. It is, frankly, none of this Court's business what kind of order the state court issues for purposes of conducting its own business. What *is* this Court's business, instead, is whether the state court order is adequate for this Court to determine that the state court actually decided that all elements of a claim of fraud under Tennessee law—including reasonable reliance—were satisfied. The Court finds that the state court's order is not adequate for *that* purpose, even if it was perfectly adequate for the state court's own purposes.

---

[19] Moreover, what little discussion the state court order contained was conspicuously devoid of any discussion of reasonable reliance and suggested, if anything, that the state court found liability irrespective of reasonable reliance by Comfort Innovations. That is to say, as far as the record indicates, "the state court might well have based its decision [to find Debtor liable for fraud under Tennessee law] on different grounds," *PaineWebber Inc.,* 870 F.2d at 1291, *i.e.,* based on satisfaction of only most, but not all, elements of fraud under Tennessee law (including reasonable reliance). Thus, the Court is "at a loss to conclude that the state court actually decided the relevant issue," *i.d..*, namely the existence (or non-existence) of reasonable reliance.

[20] "The law of the case doctrine provides that once a competent court rules on a question of law, that ruling is generally binding on courts of equal or inferior dignity as to that legal issue between the same or substantially similar parties given the same material facts." *Painewebber Inc.*, 870 F.2d at 1290. Precisely as is the case for collateral estoppel, "[i]n order for a ruling to constitute the law of the case, the question of law presented in the current action must have been actually decided in the former proceeding." *Id.* at 1291. *See also GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 340 (6th Cir. 2016) ("[T]he sole requirement for [law of the case's] application is that the court must have already 'actually decided' the relevant issue.") So cases decided in the context of law of the case are instructive in the present (collateral estoppel) context.

To support the notion that the state court found all elements of a claim of fraud under Tennessee law (and thus a claim under Section 523(a)), Comfort Innovations relies on what it calls its "lengthy and well-plead" verified complaint in state court. (Doc. No. 12 at 32). But that complaint contains only the conclusory allegation that Comfort Innovations relied on the alleged misrepresentations, and in the only place where it refers specifically to "reasonabl[e] reli[ance]," (paragraph 68), it does so in wholly conclusory fashion, without any underlying factual matter to support a claim of reasonableness beyond the mere fact that the misrepresentation relied upon was made as part of a contractual relationship.[21]

To the extent that all elements of collateral estoppel, including the "actually decided" sub-element, could be deemed satisfied, the Court would exercise its discretion not to apply collateral estoppel here. As noted above in a footnote, extant Tennessee case law indicates that application of offensive collateral estoppel is a decision committed to the discretion of this Court. This is consistent with a long tradition in American jurisprudence. As he undersigned noted roughly a quarter-century ago:

> Like the legal exceptions [to the applicability of collateral estoppel], the exercise of judicial discretion might prevent the application of collateral estoppel even when the collateral estoppel test has been satisfied.
>
> It is hornbook law that collateral estoppel is to be applied flexibly. Accordingly, courts often state that the decision whether to apply collateral estoppel is committed to the sound discretion of the trial court. Citing this discretion, courts frequently decline to apply collateral estoppel even when all elements are present and no specific legal exception is apposite.

---

[21] The Court cannot embrace the unsupported notion that reliance on a contractual promise is necessarily reasonable merely because it was made as part of a contractual bargain. Such a promise may give rise to liability on a *breach-of-contract* claim, but depending on the circumstances reliance on even a contractual promise may be unreasonable, for purposes of a *fraud* claim, when it should be apparent that the promisor likely would be unable to keep the promise.

Richardson, *supra*, at 51-52 (footnotes omitted). In its discretion, the Court alternatively declines to apply collateral estoppel here, due to its unease about resolving a (federal, obviously) dischargeability-in-bankruptcy claim based solely upon such a brief state court order. Again, the Court does not question the adequacy of the order to serve the state court's own purposes. However, the Court declines to find it appropriate to allow that order to serve the purpose of establishing, all by itself, the instant claim in bankruptcy proceedings, and it will not apply collateral estoppel to achieve that purpose.

In summary, Comfort Innovations's argument that the state court necessarily found all elements of a claim under Section 523(a)(2), so as to preclude relitigation of the existence of those elements, is hardly frivolous. But it is ultimately unpersuasive.

### B. Section 523(a)(4)

Comfort Innovations does not make any discernible argument as to why the elements of Section 523(a)(4), as distinguished from Section 523(a)(2)(A), are the same as the elements of a fraud claim under Tennessee law. Instead, it simply glosses over the distinction between, and patently lumps together, the two provisions (as well as section 523(a)(6)). Moreover, the Court is at a loss as to how it could be said that the state court decided whether (and that) Debtor (or any of his co-defendants for whose conduct Debtor arguendo is responsible) committed fraud or defalcation "while acting in a fiduciary capacity," or committed "embezzlement" or "larceny." 11 U.S.C. § 523(a)(4). Thus, it has not established that the present issue—whether all elements of Section 523(a)(4) have been satisfied—is the same as an issue previously decided by the state court in resolving Comfort Innovations's fraud claim under Tennessee law. Thus, Comfort Innovations has not shown the sameness required to prevail on its Section 523(a)(4) claim.

**C. Section 523(a)(6)**

The same can be said for Section 523(a)(6). That is, Comfort Innovations makes no discernible argument as to the sameness of the elements of a 523(a)(6) claim and the elements of fraud under Tennessee law. And it certainly did not explain how it could be said that the state court decided whether (and that) Debtor (or any of his co-defendants) perpetrated "*willful and malicious injury by the debtor to another entity or to the property of another entity*" within the meaning of 523(a)(6), as required for non-dischargeability under section 523(a)(6). 11 U.S.C. § 523(a)(6) (emphasis added). Thus, Comfort Innovations has not shown the sameness required to prevail on its Section 523(a)(6) claim.

**D. Summary**

The Court finds that collateral estoppel does not apply (offensively, in Comfort Innovations's favor) to any of the three invoked provisions of Section 523(a). And to the extent that collateral estoppel conceivably could apply here, the Court in its discretion declines to apply it, for the reasons set forth above.

As indicated above, absent the applicability of collateral to establish its claim, Comfort Innovations cannot prevail on its motion for summary judgment, and, moreover, cannot defeat Debtor's motion for summary judgment.

III.     Given the Court's decisions set forth above, Debtor's cross-appeal is moot.

Debtor states that "[o]f course, if the original appeal by Comfort Innovations (challenging the Bankruptcy Court's granting of summary judgment to the Debtor on other grounds) is affirmed,[22] this cross-appeal issue raised by the Debtor need not be addressed as the first issue

---

[22] Considering the context, it is clear, that when Debtor uses the word "affirmed" here, he is referring to the Bankruptcy Judge's order *granting summary judgment to Debtor* being affirmed—and Comfort Innovations's appeal of that order being denied.

would remain dispositive of the entire case." (Doc. No. 22 at 15). Debtor is correct. *See, e.g.*, *Strong v. Prince, Yeates & Geldzahler*, 416 F. Supp. 3d 1300, 1302–03 (D. Utah 2019) ("The bankruptcy court's . . . judgment dismissing the adversary proceeding [is] AFFIRMED. And consequently, the [defendant/appellant/cross-appellant's] cross-appeal is moot"); *In re Tamika J. Johnson*, No. 3:09CV414, 2010 WL 3908978, at *2 (S.D. Ohio Sept. 30, 2010) ("If the Court concludes that Judge Humphrey erred in dismissing any one or more or all of those Counts, it will turn to Countrywide's cross-appeal. Otherwise, it will dismiss the cross-appeal, as moot."); *In re Westpointe, L.P.*, 234 B.R. 431, 437 (E.D. Mo. 1999) ("[T]his Court need not decide the merits of the cross-appeal which would become moot if the orders of the Bankruptcy Court's orders are affirmed."), *aff'd*, 241 F.3d 1005 (8th Cir. 2001). Because the Court has denied Comfort Innovations's appeal of the Bankruptcy Judge grant of summary judgment to Debtor, on grounds unaffected by the merit or lack of merit of Debtor's cross-appeal, Debtor's cross-appeal is denied as moot.

<u>CONCLUSION</u>

For the reasons set forth above, upon de novo review of the issues in question, the judgment of the Bankruptcy Court is affirmed, and both the appeal and the cross-appeal are DENIED.

This is the final order in this case denying all relief. The Clerk is directed to close the file.

IT IS SO ORDERED.

*Eli Richardson*
—————————————
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE